IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GLENN BODIFORD,

   Plaintiff,

     v.

ATLANTA FINE CARS, INC.,

   Defendant.

CIVIL ACTION FILE
NO. 1:11-CV-4120-TWT

## ORDER

The Plaintiff says he was snookered when he paid the Defendant cash for a clunker. Now he wants the Defendant to pay. The case is before the Court on the Defendant's Motion for Summary Judgment [Doc. 20]. For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 20] is DENIED.

### I. Background

The Plaintiff Glenn Bodiford purchased a 2004 Nissan Maxima from the Defendant Atlanta Fine Cars, Inc. ("AFC"). The purchase price was $8,598. Bodiford paid $7,700 in cash on July 13, 2011, took possession of the car, and agreed to pay the remaining $898 by August 13, 2011. (See Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 1-5).

The Defendant has submitted several documents allegedly involved in the sale of the Maxima. The authenticity of many of the documents is disputed.[1] The Defendant's first exhibit is a "Bill of Sale" identifying the Maxima, listing Bodiford as the buyer, stating the purchase price, and bearing the signature of Bodiford and a representative of AFC. (See Def.'s Mot. for Summ. J., Ex. 1). Bodiford does not dispute that the Bill of Sale is a true and correct copy. (See Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 1, 6). The Defendant next offers a "Precomputed Retail Installment Contract" which shows that the remaining balance,

---

[1] Preliminarily, the Plaintiff notes that AFC has not provided affidavits authenticating the exhibits it attached to its Motion for Summary Judgment. The Plaintiff argues that the exhibits should therefore be stricken. Generally, "to be admissible in support of or in opposition to a motion for summary judgment, a document must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be the person through whom the exhibits could be admitted into evidence." WTI, Inc. v. Jarchem Indus., Inc., No. 2:10-cv-238-RWS, 2012 U.S. Dist. LEXIS 105840, at *14 (N.D. Ga. July 30, 2012) (quoting Saunders v. Emory Healthcare, Inc., 360 F. App'x. 110, 113 (11th Cir. 2010)). While the Plaintiff objects to all of the documents attached to the Defendant's Motion for Summary Judgment, he admits that Exhibits 1, 6, and 10 are true and correct copies of documents from the transaction. (See Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 1, 6, 9, 14). On the other hand, the Plaintiff contends he did not receive and has no memory of signing Exhibits 2, 3, 4, and 5, which are not attached to an affidavit. (See id. ¶¶ 5, 7, 8). Many of these documents seem to be official state documents obtained through the Georgia Independent Auto Dealers Association. The Defendant did not file a reply to the Plaintiff's arguments on the validity of the documents. The Court will admit the documents for the purpose of this motion, but the Court notes that any lack of authentication may reduce the documents' weight and credibility.

$898, was to be paid by Bodiford on August 13, 2011. (See id. Ex. 2). This document does not bear Bodiford's signature, and Bodiford contends he did not receive the document as part of the transaction. (See Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 5). Likewise, Bodiford contends that he has no memory of having seen and signed the "Motor Vehicle Dealer Title Reassignment Supplement Form," which bears Bodiford's signature and lists AFC as a lienholder. (See Def.'s Mot. for Summ. J., Ex. 3; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 7). Bodiford further contends that he never saw the "Buyers Guide" document with hand-written notations indicating the rebuilt state of the Maxima and emphasizing that there was no warranty. (See Def.'s Mot. for Summ. J., Ex. 4; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 8). Bodiford's signature on this document is peculiarly written backwards and located among the hand-written notations. (See Def.'s Mot. for Summ J., Ex. 4). Bodiford claims he did not receive and has no memory of signing the "Warranty Disclaimer" which bears Bodiford's signature and states in several places that the Maxima is being sold "as is." (See Def.'s Mot. for Summ. J., Ex. 5; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 8). Bodiford agrees that he signed the "Odometer Disclosure Statement" offered as the Defendant's Exhibit 6, which discloses the Maxima's mileage. (See Def.'s Mot. for Summ. J., Ex. 6; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 9).

Finally, Bodiford contends that AFC did not show him the certificate of title to the Maxima or have him sign the certificate at the time of sale. (See Statement of Additional Material Facts in Opp. to Def.'s Mot. for Summ. J. ¶¶ 12-14). Both parties submitted a copy of the certificate of title, but the Plaintiff's copy also includes the second page of the title. (See Def.'s Mot. for Summ. J., Ex. 10; Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J., Ex. 1). The second page does not bear the signature of AFC or Bodiford. (See Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J., Ex. 1).

Soon after the sale, AFC mailed the Maxima certificate of title to the tag office in Luverne, Alabama, where Bodiford resided, apparently pursuant to an agreement whereby AFC would assist Bodiford in obtaining a tag in Alabama. (See Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 12). The Alabama tag office informed AFC that Bodiford could not obtain an Alabama tag with his current Ohio driver's license, and AFC sent Bodiford a letter describing the situation. (See id. ¶ 13).

Bodiford claims that the absence of an executed certificate of title prevented him from acquiring a tag in Alabama. (See id. ¶ 14). Because of the problems in obtaining an executed certificate of title, Bodiford obtained a Carfax report on the Maxima. (See Statement of Additional Material Facts in Opp. to Def.'s Mot. for Summ. J. ¶ 27). The Carfax report revealed that the Maxima was involved in at least

three accidents and was declared a total loss before Bodiford purchased it. (Id. ¶ 15). Bodiford alleges this was the first time he learned of the car's accident history, that AFC assured him the car had no problems, and that he would not have purchased the Maxima with knowledge of the problems. (Id. ¶¶ 19-22, 27).

Bodiford brought suit against AFC on November 29, 2011, alleging causes of action for violations of the Federal Odometer Act, 49 U.S.C. § 32701 *et seq.*, the Georgia Motor Vehicle Certificate of Title Act, O.C.G.A. § 40-3-1 *et seq.*, the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.*, as well as causes of action for fraud and breach of contract. (Compl. ¶¶ 37-78).

## II. Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

III. Discussion

The Defendant moves for summary judgment on several grounds. First, the Defendant contends that the Federal Odometer Act does not provide a cause of action in this case. Second, the Defendant contends it did not violate the Georgia Motor Vehicle Certificate of Title Act. Third, the Defendant argues that it did not commit fraud because it informed Bodiford of the condition of the Maxima at the time of sale. Last, the Defendant argues that the contract was not breached because it disclosed the condition of the car and because the Defendant was not required to execute the certificate of title and provide it to the Plaintiff.[2]

A. The Federal Odometer Act

The Defendant contends that Bodiford cannot bring a cause of action under the Federal Odometer Act for the Defendant's failure to show Bodiford the certificate of

---

[2] The Defendant's Motion for Summary Judgment sought summary judgment on the Plaintiff's claims under the Georgia Fair Business Practices Act ("FBPA") but did not offer any argument in its associated brief. (See Def.'s Mot. for Summ. J., at 2). The Plaintiff's response notes that he brought two claims under the FBPA, one for the violation of the Odometer Act and one for "unfair or deceptive practices in a consumer transaction." (See Compl. ¶¶ 56-62; Pl.'s Resp. to Def.'s Mot. for Summ. J., at 10-11). The Defendant did not file a reply brief. Accordingly, the Defendant has not met its burden on the FBPA claims, and they will survive summary judgment.

title because the Act only provides for civil liability when a transferor intentionally defrauds a transferee with respect to the mileage on the vehicle. This contention is not in line with Eleventh Circuit precedent. In Owens v. Samkle Automotive, Inc., 425 F.3d 1318 (11th Cir. 2005), the court held that the plain language of the Odometer Act did not limit causes of action to those concerning the mileage of the vehicle. The court noted that "[t]o augment the statutory language with an additional element, never mentioned by Congress, that the fraud must be 'with respect to the vehicle's mileage' violates the cardinal rule of statutory construction." Id. at 1321. Here, Bodiford's allegations that AFC did not show him the certificate of title or have him sign the certificate of title, as required by 49 U.S.C. § 32705, with the intent to defraud him, fall within the purview of the Federal Odometer Act. See Tuckish v. Pompano Motor Co., 337 F. Supp. 2d 1313, 1315 (S.D. Fla. 2004) (holding that failure to provide a purchaser with a copy of the certificate of title violates the Odometer Act). There is a factual dispute as to whether AFC showed Bodiford the certificate of title prior to the sale. (See Pl.s' Resp. to Def.'s Mot. for Summ. J., Ex. 1). The Defendant did issue an "Odometer Disclosure Statement," stating the mileage on the Maxima, as well as a "Motor Vehicle Reassignment Supplement," also stating the vehicle's mileage. (See Def.'s Mot. for Summ J., Exs. 3, 6). The disclosure statement is written, discloses the mileage on the Maxima, and bears the Plaintiff's and the

Defendant's signatures and addresses. Neither the reassignment document nor the disclosure statement, however, bears all of the information shown on the certificate of title, most importantly that the Maxima had been totaled and rebuilt. (See Def.'s Mot. for Summ. J., Exs. 3, 6, 10). Viewing all inferences in favor of the nonmovant Plaintiff, the Court cannot foreclose a factual finding that AFC withheld the certificate of title from Bodiford to prevent him from learning of the Maxima's rebuilt status in order to induce him to make the purchase. Accordingly, summary judgment should be denied on these grounds.

Additionally, the Defendant contends it was not required to disclose the certificate of title because the transaction created a security interest. See 49 C.F.R. § 580.3 (defining transferor for the purposes of the Odometer Act as "any person who transfers his ownership of a motor vehicle by sale, gift, or any means other than the creation of a security interest, and any person who, as agent, signs an odometer disclosure statement for the transferor."). "Under Georgia law, the only way to create a security interest in a motor vehicle is under Georgia's Motor Vehicle Certificate of Title Act, OCGA § 40-3-1 et seq." State v. Benton, 305 Ga. App. 332, 334 (2010) (quoting Hairston v. Savannah River Plant Fed. Credit Union, 216 Ga. App. 246, 247 (1995) (internal quotation marks and alterations omitted)). O.C.G.A. § 40-3-2(13) defines "security interest" as:

an interest in a vehicle reserved or created by agreement which secures the payment or performance of an obligation, such as a conditional sales contract, chattel mortgage, bill of sale to secure debt, deed of trust, and the like. This term includes the interest of a lessor under a lease intended as security.

O.C.G.A. § 40-3-2(13). "Furthermore, the Act requires that an agreement that reserves or creates a security interest in a motor vehicle be in writing." Benton, 305 Ga. App. at 334 (citing OCGA § 40-3-2(12)).

In Benton, the defendant was accused of converting a truck he had agreed to purchase with an installment plan. The defendant took possession of the truck but did not submit any payments to the seller. The seller demanded that the defendant return the truck and, when the defendant refused, the state charged the defendant with conversion. The trial court rejected the defendant's guilty plea because the state had failed to show the defendant had a legal obligation to return the truck when he missed the periodic payments. The Court of Appeals, in determining whether the buyer and seller had created a security interest in the truck, rejected the argument that "it was implied in [the buyer's] agreement with [the seller] that [the buyer] no longer had the right to possess the truck if he was not making the scheduled payments." Id. at 334. Instead, the court held that "a security interest in a motor vehicle does not arise merely from the fact that a buyer agrees to make periodic payments after taking possession." Id. "To prove that [defendant] was under a legal obligation to make a specified

disposition of the truck, therefore, the State was required to prove that [defendant] explicitly agreed to return the truck to [the seller] if he could not make the payments." Id.

Here, there is insufficient evidence to determine conclusively the documents Bodiford signed created a security interest. It is undisputed that Bodiford agreed to purchase the Maxima for $8,598. He paid $7,700 up front and owed the remaining $898 within a month. Bodiford took possession of the Maxima after paying the $7,700. The several documents put forward by the Defendant does not firmly establish that Bodiford explicitly agreed to provide AFC a security interest in the Maxima. While the certificate of title does list Atlanta Fine Cars as holding the first security interest, there are no additional references to a security interest or agreement in any of the documents provided by both parties. (See Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 1). Further, Bodiford contends he never saw the certificate of title, and AFC did not execute the title. (See id.) The Bill of Sale lists the remaining $898 owed to AFC as "deferred cash pickup down payment" as opposed to "balance to be financed or cash due," suggesting that the transaction did not involve financing or a security interest. (See Def.'s Mot. for Summ. J., Ex. 1). The "Precomputed Retail Installment Contract" identifies AFC as the Holder and Seller and states "You are giving a security interest in the vehicle being purchased." (See Def.'s Mot. for Summ.

J., Ex. 2). However, this document does not bear Bodiford's signature and Bodiford claims he has not seen the document. (See Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 5). The document states that there is no financing charge and that Bodiford must pay the $898 by August 13, 2011. (See id.) Bodiford notes that the document was not properly authenticated. See WTI, Inc. v. Jarchem Indus., Inc., No. 2:10-cv-238-RWS, 2012 U.S. Dist. LEXIS 105840, at *14 (N.D. Ga. July 30, 2012) (noting that at the summary judgment stage documents should be attached to and authenticated by an affidavit). None of the documents bear the term "security agreement" or make any reference to collateral. The documents do not describe how the debt is to be repaid and do not describe what happens in the event of default. Bodiford argues he did not agree to the creation of a security interest and the absence of explicit terminology such as "security agreement" and "collateral" supports his contention. While AFC's actions in sending the certificate of title to Alabama are consistent with maintaining a security interest in the Maxima, its actions do not themselves create an explicit security agreement. See Spoon v. Herndon, 167 Ga. App. 794, 795 (1983) (noting that compliance with the Motor Vehicle Certificate of Title Act does not itself "affect the creation of the security interest, which remains a matter of contract between the parties."). The Court concludes there is insufficient evidence of an "explicit agreement to return the [Maxima]" in the case of default. See

Benton, 305 Ga. App. at 334. Accordingly, there is an issue of fact concerning whether a security agreement was created and summary judgment should be denied. See Cantrade Private Bank Lausanne v. Torresy, 876 F. Supp. 564, 573-74 (S.D.N.Y. 1995) (concluding that a purported security agreement was ambiguous and that therefore there was a question of fact as to whether a security interest was retained).

### B. The Georgia Motor Vehicle Certificate of Title Act

The Defendant contends that it complied with the relevant provisions of the Motor Vehicle Certificate of Title Act because it adhered to O.C.G.A. § 40-3-51 which governs certificates of title when the owner creates a security interest in the vehicle. The Plaintiff responds that there was no agreement to create a security interest based on the remaining amount owed on the Maxima, and that AFC was therefore required to comply with O.C.G.A. § 40-3-32(a). As noted in the preceding section, there is an issue of fact as to whether a security interest was created. Accordingly, summary judgment on AFC's compliance with the Certificate of Title Act should be denied.

### C. Fraud

The Defendant moves for summary judgment on the Plaintiff's fraud claim arguing that the disclosure of the "Buyer's Guide" made the Plaintiff aware of the state of the Maxima at the time of sale. "The tort of fraud has five elements: a false

representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." Najem v. Classic Cadillac Atlanta Corp., 241 Ga. App. 661, 664 (1999) (quoting Howard v. McFarland, 237 Ga. App. 483, 483-84 (1999)). "For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort." Id.

Here, the Plaintiff has created a genuine issue of material fact sufficient for his fraud claim to survive summary judgment. Specifically, the Plaintiff has shown that the "Buyer's Guide" contained in Exhibit 4 to the Defendant's brief may not have been signed by or shown to the Plaintiff. While the Plaintiff's signature does appear on the document, it is mirrored and inserted into handwritten notes in a peculiar fashion. (See Def.'s Mot. for Summ J., Ex. 4). Likewise, Bodiford claims he did not receive and has no memory of signing the Defendant's Exhibit 5, which is a warranty disclaimer that bears Bodiford's signature. (See id. at Ex. 5; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 8). Bodiford also argues that the document was not properly authenticated. See WTI, Inc. v. Jarchem Indus., Inc., No. 2:10-cv-238-RWS, 2012 U.S. Dist. LEXIS 105840, at *14 (N.D. Ga. July 30, 2012) (noting that at the summary judgment stage documents should be attached to and authenticated by an affidavit). Finally, although the warranty disclaimer bears a stamp

that states "possible frame damage" and "ABS and SRS light on," it does not state that the Maxima had been rebuilt. (See Def.'s Mot. for Summ J., Ex. 4). Only the certificate of title and the Buyer's Guide's handwritten notes state that the Maxima had been rebuilt, and Bodiford has created an issue of fact as to whether he was provided with these documents. Therefore, at this stage, it is unclear whether AFC made misrepresentations to or withheld information from Bodiford, in particular concerning the rebuilt status of the vehicle, in order to induce the Plaintiff to purchase the Maxima. This uncertainty also creates issues of fact with respect to scienter, intent, and justifiable reliance. Further, the Plaintiff has created an issue of fact with respect to damages because he paid $7,700 for the Maxima under allegedly fraudulent circumstances. Accordingly, summary judgment should be denied on these grounds.

D. Breach of Contract

The Defendant moves for summary judgment on the Plaintiff's breach of contract claim arguing that the contract was not breached because the Defendant disclosed the condition of the car and because the Defendant was not required to execute the certificate of title and provide it to the Plaintiff. "The elements for a breach of contract claim in Georgia are the breach, which must be more than de minimis, and the resultant damages to the party having the right to complain about the contract being broken." TechBios, Inc. v. Champagne, 301 Ga. App. 592, 595 (2009).

As has been discussed above, there is an issue of fact as to whether a security interest was created, and the existence of a security interest affects whether the Defendant was required to execute the certificate of title and provide it to the Plaintiff. Additionally, as discussed in the preceding section, there is an issue of fact with respect to the representations contained in the documents the Plaintiff signed. At the very least, the Plaintiff has created an issue of fact with respect to the contract because the absence of his signature in some documents, the absence of authentication for other documents, and the presence of his backwards signature in the Buyer's Guide render the overall contract ambiguous. See St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (holding that ambiguity in a contract must be resolved by the jury). Accordingly, summary judgment should not be granted on Bodiford's claim for breach of contract.

## IV. Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 20] is DENIED.

SO ORDERED, this 7 day of November, 2012.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge